Revised March 4, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-40083
_____

UNITED STATES OF AMERICA

                          Plaintiff - Appellee

    v.

JULIAN GARCIA-GARCIA

                          Defendant - Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

January 28, 2003

Before KING, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

KING, Chief Judge:

Defendant-Appellant Julian Garcia-Garcia appeals the ruling by the District Court for the Southern District of Texas denying his motion to suppress evidence seized at a fixed immigration checkpoint.  We affirm.

## I.  FACTS AND PROCEDURAL BACKGROUND

On June 2, 2001, border patrol agents conducted an immigration inspection of a northbound bus traveling through the

inspection lane at a fixed checkpoint about fifteen miles north of Laredo. Agent Gutierrez entered the bus to question the passengers, while Agent Zelmer led a trained dog to search the undercarriage of the bus. Gutierrez noticed Julian Garcia-Garcia ("Garcia") sitting alone near the back of the bus. Garcia was nervously playing with a piece of paper, which he pocketed before handing the agent his resident alien card. The agent also noticed that Garcia appeared anxious, was sweating, and mumbled answers concerning his citizenship.

Before Gutierrez had finished verifying the immigration status of the rest of the passengers on the bus, he noticed Zelmer and the dog get on the bus. Zelmer had taken the dog to check the luggage bins in the undercarriage of the bus. The canine alerted in the bin nearest to the rear tires; however, the dog alerted not to the suitcases in the bin but rather to the bin's ceiling (or, in other words, to the floor of the passenger compartment). Zelmer said that, based on his prior experience, the dog's signal indicated that narcotics might be hidden in the bathroom located at the rear of the bus.

Once inside the bus, the dog pulled Zelmer to the rear of the vehicle. At the suppression hearing, Zelmer explained that the detection of drugs by the dog is a two-part process. First, the dog "alerts" to the odor; the dog's respiratory rate increases and the dog generally appears more excited and alert as it picks up speed and attempts to locate the source of the odor.

Second, the dog "indicates" the odor by, in the case of a "passive alert" dog like the one used in this case, sitting or standing nearby and staring at the source. Zelmer testified that, when the dog walked down the aisle, bypassed Garcia, stopped, and turned around, "that's an alert in my book." When the dog then moved in behind Garcia's seat and put its nose underneath his seat, that indication demonstrated that the dog had traced the odor to Garcia.[1] While Zelmer maintains that the dog, in diving under the seat to indicate the source of the odor, never made contact with Garcia and did not sniff him individually at close range, Garcia claims that the dog both sniffed him and touched its nose to his pants and shoes. Garcia admits that the dog did not hurt him in any way, either by scratching him, knocking him over, or biting him.

Zelmer asked Garcia "what he had"; Garcia lifted his shirt to reveal packages taped to his body. Zelmer told Gutierrez, and Garcia lifted his shirt to show Gutierrez the packages. The agents removed Garcia from the bus; when Garcia was exiting, the dog again alerted to him. Zelmer led the dog back into the bus, where a full inspection triggered no additional alerts. Garcia was subsequently searched at the secondary checkpoint complex;

---

[1] Zelmer testified that the dog's normal method of indication is to sit or stand next to the source of the odor. However, the confined surroundings of the bus and narrow width of the aisle made it impossible for the dog to indicate normally.

3

additional packages were found taped to his lower legs, and all of the packages contained marijuana.

On July 3, 2001, Garcia was charged with possession of marijuana and possession of marijuana with intent to distribute. Garcia filed a motion to suppress the evidence seized as a result of the dog sniff. Garcia argued that the evidence should be suppressed because the dog alerted specifically to the bathroom area. He contended that the police should have removed all of the passengers from the bus before leading the dog in to search the bathroom. Garcia also argued that the drugs should be suppressed because the agents lacked any individualized reasonable suspicion to permit the dog to sniff him.

The district court, while "[a]ccepting Defendant's version that the canine's nose actually touched his lower leg," denied Garcia's motion to suppress. The court found that the dog's alert in the luggage compartment was only to the "rear of the bus" rather than to the bathroom specifically. The court also stated that Garcia's suggestion that the passengers should have been removed was an unreasonable alternative. The district court ultimately ruled that the agents' actions were reasonable under the circumstances and suppression of the evidence was not warranted.[2]

---

[2] The district court never specifically stated that it considered the sniff-and-contact in this case to be a Fourth Amendment search; the court said only that the agents had acted reasonably and that there was "no basis for suppressing the

4

After his motion to suppress the marijuana failed, Garcia pled guilty to the possession charge and was sentenced to 208 days in jail and three years' supervised release. He appeals the denial of his motion to suppress.

## II. SNIFF-AND-CONTACT AS A FOURTH AMENDMENT SEARCH

"When reviewing a district court's ruling on a motion to suppress, we review questions of law de novo and accept the factual findings of the trial court unless they are clearly erroneous." United States v. Kelly, 302 F.3d 291, 293 (5th Cir. 2002). We must also view the evidence in the light most favorable to the party who prevailed in the district court. United States v. Jones, 234 F.3d 234, 239 (5th Cir. 2000). Here the district court "accepted" Garcia's allegation that the dog came into contact with his pants or shoes during the course of the checkpoint stop. Because this finding of fact is not clearly erroneous, we must presume that a "sniff-and-contact" occurred.

*A. Drug-Sniffing Dogs at Immigration Checkpoints*

The purpose of an immigration checkpoint is to verify the immigration and naturalization status of the passengers in the vehicles passing through the checkpoint. The Supreme Court has held that this purpose is constitutionally sufficient to support stopping all vehicles which pass through the checkpoint, even in the absence of any individualized reasonable suspicion or

---

evidence in this case."

5

probable cause that a particular vehicle contains illegal immigrants.  United States v. Martinez-Fuerte, 428 U.S. 543, 556 (1976).  However, "[t]he scope of an immigration checkpoint stop is limited to the justifying, programmatic purpose of the stop: determining the citizenship status of persons passing through the checkpoint."  United States v. Machuca-Barrera, 261 F.3d 425, 433 (5th Cir. 2001).  "[A]ny further detention beyond a brief question or two or a request for documents evidencing a right to be in the United States must be based on consent or probable cause."  United States v. Portillo-Aguirre, 311 F.3d 647, 652 (5th Cir. 2002).

Therefore, the "permissible duration of an immigration stop is the 'time reasonably necessary to determine the citizenship status of the persons stopped.'"  Id. at 653 (quoting Machuca-Barrera).  This duration is brief – only long enough for the vehicle's occupants to "respon[d] to a brief question or two and possibly [produce] a document evidencing a right to be in the United States."  Martinez-Fuerte, 428 U.S. at 557-58.  While an officer may ask questions outside of the permissible scope of the stop, he may do so "only so long as such questions do not extend the duration of the stop.  It is the length of the detention, not the questions asked, that makes a specific stop unreasonable."  Machuca-Barrera, 261 F.3d at 432.  "[I]f an agent does not develop reasonable suspicion of [drug] activity before the

6

justifying purpose of a checkpoint stop has been accomplished, he may not prolong the stop."  Portillo-Aguirre, 311 F.3d at 657.

Where border patrol agents wish to employ a drug-sniffing dog at an immigration stop, they may do so only if it does not lengthen the stop beyond the time necessary to verify the immigration status of the vehicle's passengers.  Machuca-Barrera, 261 F.3d at 432 n.21.  In this case, the dog alerted to the presence of narcotics before Agent Gutierrez had completed his questioning of the passengers on the bus.  Once the dog alerted, the agents had, at a minimum, sufficient reasonable suspicion to permit them to prolong the stop to explore further the potential source of the dog's alert.  Cf. United States v. Williams, 69 F.3d 27, 28 (5th Cir. 1995) (holding that a canine alert is sufficient to establish probable cause to search a vehicle for drugs).  Therefore, this stop did not exceed the scope and limits placed on immigration checkpoint activity in prior Fifth Circuit cases.

B.    "Sniff-and-Contact" as a Fourth Amendment Search

While the sniff alert to the undercarriage of the bus provided probable cause to search the vehicle, it did not automatically also provide probable cause to search the individuals in the vehicle.  As the Supreme Court has explained:

> Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.  This requirement cannot be undercut or avoided by simply

7

> pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the "legitimate expectations of privacy" of persons, not places.

Ybarra v. Illinois, 444 U.S. 85, 91 (1979); see also United States v. Munoz, 957 F.2d 171, 173 (5th Cir. 1992) ("Officers executing a search warrant of a particular premises may not search a person found on the premises absent individualized probable cause."). As the agents lacked any individualized probable cause or reasonable suspicion that Garcia was in possession of drugs prior to the dog's alerting to his person, the remaining question in this case is whether, given the circumstances of the stop, the dog's sniff-and-contact of Garcia: (1) constituted a Fourth Amendment search; and (2) if it was a search, whether it was reasonable under the circumstances. United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985) ("The Fourth Amendment commands that searches and seizures be reasonable. What is reasonable depends upon all the circumstances surrounding the search or seizure and the nature of the search or seizure itself.").

If we assume, without deciding,[3] that a dog sniff of an individual is a search when the dog also makes contact with the

---

[3] Because the district court accepted Garcia's allegation that the dog touched him, we are treating this case as a sniff-and-contact. Therefore, we express no opinion on whether a dog sniff of an individual without concomitant contact is a Fourth Amendment search.

8

individual's body, see Kelly, 302 F.3d at 293 n.1, and Horton v.
Goose Creek Independent School District, 690 F.2d 470, 474 (5th
Cir. 1982), such a search is analogous to a frisk or pat-down of
the type envisioned by the Supreme Court in Terry v. Ohio, 392
U.S. 1 (1968).  See Kelly, 302 F.3d at 295; Horton, 690 F.2d at
479.  The only remaining question is whether, under the specific
factual circumstances of this case, that search violated Garcia's
Fourth Amendment rights.

C.    The Reasonableness of the "Sniff-and-Contact" at an
      Immigration Checkpoint

The reasonableness of a Fourth Amendment search depends on
the circumstances under which the search was conducted.[4]  Montoya
de Hernandez, 473 U.S. at 537.  Here, the sniff-and-contact
occurred at a fixed checkpoint.  As stated previously, agents at
a fixed checkpoint may only question the passengers briefly (and

---

[4]  The Tenth Circuit has addressed a sniff-and-contact in
the particular circumstance of a roadblock set up to interdict
drugs coming into a prison.  In Romo v. Champion, 46 F.3d 1013
(10th Cir. 1995), plaintiffs brought a § 1983 action after police
stopped their car at a roadblock near a prison entrance.  At the
roadblock, the police used a dog to sniff the vehicle; the dog
also sniffed both plaintiffs' bodies (coming into contact with at
least one plaintiff during the sniff).  Id. at 1014-15.  The
court held that the sniff of the plaintiffs' bodies was
"reasonable in light of all of the relevant circumstances."  Id.
at 1018.  The plaintiffs had a reduced expectation of privacy
because they were visiting the prison, and the court found that a
dog sniff of the "area surrounding one's body is not terribly
intrusive."  Id.  In addressing the sniff-and-contact
specifically, the court stated that, "[t]o the extent that the
dog's nose physically touched [plaintiff] Misty Gardner, that
contact was purely incidental.  Such a brief, unintentional touch
cannot make an otherwise reasonable search unconstitutional."
Id.

request documentation) about their immigration status absent reasonable suspicion of illegal activity that arises before the immigration status of the passengers has been verified. While the dog's initial alert in the luggage bin did not provide individualized reasonable suspicion to search Garcia, the dog's subsequent alert in the aisle of the bus did provide reasonable suspicion that Garcia possessed the drugs that the dog sensed. When the dog then indicated to Garcia by crawling under his seat, sniffing him more closely and touching its nose to Garcia's shoes and lower leg, that sniff-and-contact search was reasonable given that, as we stated in Horton and reiterated in Kelly, the sniff-and-contact is the fundamental equivalent of a Terry stop.

The reasonable suspicion created by the dog's alert is also sufficient to support Zelmer's questioning of Garcia about whether he was in possession of any drugs. Garcia lifted his shirt to reveal the packages without being frisked, and this new information surely gave the agents probable cause to remove Garcia from the bus and search him further. The district court properly ruled that Garcia's proposed alternative – removing all of the passengers from the bus before permitting the dog to search it – was more unreasonable than what the agents did in this case. The agents' actions in this case were reasonable under the circumstances; there was no Fourth Amendment violation.

### III. CONCLUSION

10

We AFFIRM the district court's ruling denying Garcia's motion to suppress the evidence seized as a result of the dog sniff, and we accordingly AFFIRM Garcia's conviction and sentence.