United States Court of Appeals
Fifth Circuit

**F I L E D**

December 11, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-51377

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

        versus

ERIC EUGENE HARRISON,

                                        Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
No. EP-04-CR-2197-FM

Before GARWOOD, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

        Eric Harrison (Harrison) was found guilty by the jury of knowingly and intentionally possessing with intent to distribute 100 kilograms or more of marihuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii).  He was subsequently sentenced to a term of ninety-seven months' incarceration and five years of supervised release.  Harrison raises several issues on appeal. Finding no reversible error, we affirm his conviction and sentence.

---

        [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I. Factual Background

Harrison was stopped at the Sierra Blanca immigration checkpoint driving an 18-wheeler tractor-trailer at approximately 1:30 a.m. on September 17, 2004. After initial questioning by Border Patrol Agent Soto,[1] Harrison consented to a search of his vehicle. Thereafter, using an alien and drug detecting dog, which alerted to the trailer and to the driver's side of the tractor, agents found in the trailer a legitimate commercial load along with bundles of marihuana in distinguishable cardboard boxes that did not match the rest of the load. In total, these boxes contained 1,891 pounds, or 857 kilograms, of marihuana. Agent Soto then arrested Harrison and read him his *Miranda* rights. Harrison signed a written acknowledgment of his rights at 1:35 a.m., approximately five minutes after the initial stop. On the acknowledgment form, Harrison indicated he wished to waive his rights and make a statement.

Agent Soto then placed Harrison in a 10 foot by 15 foot holding cell to await the arrival of the DEA agent, who would question Harrison about the drugs found in his trailer.[2] Then,

---

[1]Agent Soto testified that Harrison aroused some suspicions by acting in a nervous manner. He described him as stuttering, failing to answer questions in a timely manner, failing to look him in the eye, having shaking hands, and generally acting in a nervous manner.

[2]Harrison was alone in the holding cell. The cell had water and a restroom and a place to sit, as well as benches on which Harrison could have slept. He was not handcuffed while in the

2

in the search of Harrison's tractor, border patrol agents found $22,000 in cash in a black duffel bag stuffed under the truck's bunk bed. Harrison later claimed the cash was his "gas money," and that he obtained it legitimately from his wife who received it from her workers' compensation case. However, agents also found in that search a gas receipt dated that same day from a nearby truck stop totaling $211.58, paid for with a credit card.

DEA Agent Carmen Coutino arrived at the checkpoint at 5:30 a.m., approximately four hours after the initial stop and discovery of the marihuana. Upon her arrival, Agent Coutino was debriefed by the border patrol agents, inspected the truck, photographed Harrison and the marihuana, and fingerprinted Harrison. Before interviewing Harrison, Agent Coutino advised Harrison of his rights again, and Harrison signed yet another waiver of his rights at 7:00 a.m. During the subsequent interview, Harrison confessed to transporting the marihuana from El Paso, Texas to Richmond, Illinois in exchange for $60,000 compensation to be received upon delivery. The street value of the marihuana was $565,000 in El Paso and $1.7 million in Richmond.

Harrison was indicted on October 13, 2004, for knowingly and intentionally possessing with intent to distribute 100 kilograms or more of marihuana in violation of 21 U.S.C. §§ 841(a)(1) and

_____

cell or during his subsequent interview by the DEA agent.

3

841(b)(1)(B)(vii). He has been represented by counsel continuously since a time prior to October 16, 2004. In November 2004, Harrison moved to suppress the statements he made to law enforcement officials,[3] but the district court denied the suppression motion after an evidentiary hearing on January 14, 2005. Harrison's first jury trial began on April 18, 2005, but ended in mistrial April 21, 2005. Harrison's second jury trial began on July 13, 2005, and the jury found him guilty as charged on July 18, 2005. At the sentencing hearing on October 12, 2005, Harrison was sentenced to a term of ninety-seven months of incarceration, five years of supervised release, and a $100 mandatory special assessment.

## II. Discussion

Harrison appeals his sentence and conviction, asserting the following: (1) the district court erred in denying Harrison's motions to suppress statements made at the time of his arrest; (2) the district court erred in admitting evidence of the cash found in Harrison's truck; (3) a *Brady* violation for admitted evidence wrongfully held from the defense before trial; (4) the district court erred in denying Harrison's motion for a continuance of the sentencing hearing in order for Harrison to obtain a psychiatric examination, which could have yielded

---

[3]In his January 3, 2005 brief in support of his motion Harrison also argued that the search of his trailer and tractor was illegal and the fruits thereof should be suppressed.

considerations for a reduced sentence; and (5) the district court erred in not allowing Harrison a two-point reduction in offense level based upon his allegedly minor role pursuant to U.S.S.G. § 3B1.2.

**A. Motion to Suppress**

We review a denial of a motion to suppress for clear error as to factual findings and legal findings *de novo. United States v. Reyes*, 349 F.3d 219, 222 (5th Cir. 2003). Harrison first argues that because his detention and arrest by the Border Patrol agents were illegal, the statements and evidence obtained as a result of the detention and arrest were wrongfully admitted into evidence in violation of the Fourth Amendment and *Miranda v. Arizona*, 86 S.Ct. 1602 (1966). Harrison further argues that his confession is not admissible because it was coerced. We find no error in the district court's determinations.

Harrison contends that the border patrol agents had insufficient evidence to detain and search his truck and trailer and that the detention and search was an unreasonable search and seizure under the Fourth Amendment. He claims that he did not effectively consent and that the justification for the search given by the agent was insufficient.[4] Specifically, Harrison argues that his suspicious demeanor and behavior as perceived by

---

[4]However, his brief in this court states that at the secondary inspection area "the Appellant consented to a search of his vehicle."

5

the border patrol agent was insufficient cause for the search, stating in his reply brief that "it appears that no discernable reason was provided in having Mr. Harrison move his truck to the secondary inspection point." However, immigration checkpoint stops, and referral to the secondary inspection area there, do not require individualized suspicion, and asking for consent to search a vehicle does not unreasonably prolong an immigration checkpoint stop. *United States v. Ventura*, 447 F.3d 375, 378 (5th Cir. 2006); *United States v. Chacon*, 330 F.3d 323, 326–27 (5th Cir. 2003). Furthermore, there is no evidence to suggest clear error in the district court's finding that Harrison consented to the border patrol agents' search of his trailer and tractor. In addition, the drug and alien detection dog alerted the agents to the trailer and tractor before the agents searched. *See United States v. Garcia–Garcia,* 319 F.3d 726, 730 (5th Cir. 2003) ("Once the dog alerted, the agents had, at a minimum, sufficient reasonable suspicion to permit them to prolong the stop to explore further the potential source of the dog's alert."); *United States v. Williams,* 69 F.3d 27, 28 (5th Cir. 1995) (holding that a canine alert is sufficient to establish probable cause to search a vehicle for drugs).

Harrison also claims that the district court should have suppressed his confession because it was involuntarily given due to a lack of proper waiver of rights, coercion, and psychological

6

pressure.  However, this is untenable in light of the evidence on record and this court's precedent.  To determine whether a statement is involuntary, this court's test considers whether the tactics employed by the officers constitute a Fifth Amendment due process violation and are "'so offensive to a civilized system of justice that they must be condemned.'" *United States v. Bengivenga*, 845 F.2d 593, 601 (5th Cir. 1988) (quoting *Miller v. Fenton*, 106 S.Ct. 445, 449 (1985)). The district court found, and the record fully supports, that Harrison knowingly and voluntarily acknowledged and waived his rights in writing twice before making the statements he claims should have been suppressed.

Also, Harrison never raised the issue of his alleged psychological problems at the suppression hearing and there was never any indication that Harrison was incapable of understanding surrounding events.  In short, our precedent and previous opinions support a finding of voluntariness under these facts.[5]

---

[5]The Supreme Court has held that a defendant's mental condition is a factor in determining voluntariness. *Colorado v. Connelly*, 107 S.Ct. 515, 520 (1986). However, the Supreme Court also noted that "a defendant's mental condition, by itself and apart from its relation to official coercion" will not dispose of the inquiry into constitutional "voluntariness." *Id.* (not requiring a confessor to be "totally rational and properly motivated").  *See also id*. at 518, 520 n.1 (listing cases where official coercion has been found, all describing events supported by evidence, and finding a confession admissible where defendant "was suffering from chronic schizophrenia and was in a psychotic state at least as of . . . the day before he confessed"); *United States v. Cardenas*, 410 F.3d 287, 295 (5th Cir. 2005) (discussing

7

## B. Admission of Cash Evidence and *Brady* Violation

We also find that the district court did not abuse its discretion in admitting into evidence testimony concerning the $ 22,000 in cash found in his truck. The record supports a finding that its introduction was not overly prejudicial or cumulative, and therefore not in violation of FED. R. EVID. 403 and 404. Indeed, the presence of large sums of money is often considered relevant as an indication of guilt in drug possession cases. *See United States v. Ortega Reyna*, 148 F.3d 540, 544 (5th Cir. 1998) (listing types of behavior that this court has previously recognized as circumstantial evidence of guilty knowledge, including "possession of large amounts of cash").

In addition, Harrison fails to state a *Brady* violation claim as to the introduction of evidence allegedly withheld from the defense without a prior opportunity for review by the defense. The evidence at issue, the actual manifest of Harrison's cargo on the day of the arrest, was introduced at trial over defense counsel's objections and its existence was known to the defense ever since not later than April 2005. *See United States v. Infante*, 404 F.3d 376, 386 (5th Cir. 2005) ("*Brady* rights are not denied where the information was fully available to the defendant

---

factual scenarios whereby coercion or involuntariness was found or not found); *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978) (listing cases where the court found that the circumstances surrounding the defendant's confession provided ample support for a trial court's ruling of voluntariness).

and his reason for not obtaining and presenting such information was his lack of reasonable diligence."). Also, there is no sufficient indication that, even had the manifest been withheld by the prosecution, it was exculpatory or impeaching. *See United States v. Sipe*, 388 F.3d 471, 477 (5th Cir. 2004) (listing elements of a *Brady* claim).

**C. Denial of Motion for Continuance of Sentencing Hearing**

In October 2005 the day before the sentencing hearing was scheduled (as per the district court's July 18, 2005 order) to commence, Harrison moved for a continuance of the hearing in order to obtain a psychiatric examination, based on information his counsel apparently received from Harrison's brother and sister just after the second trial, about three months earlier. Harrison claims the district court's denial of his motion denied him the right to argue for a downward departure based on his psychological issues, including ADHD, using the sentencing-determination factors listed in 18 U.S.C. § 3553(a)(1). Harrison argues he should be given the opportunity to present evidence as to his psychological condition in order to argue that a reasonable sentence would be lesser than that imposed. He contends that a new sentencing hearing should be held since the district court did not have the opportunity to properly consider that argument because it denied him the opportunity to obtain additional evidence to support it.

A district court's denial of a motion to continue a sentencing hearing is reviewed for abuse of discretion. *United States v. Barnett*, 197 F.3d 138, 144 (5th Cir. 1999). In order for there to be an abuse of discretion, the denial must be arbitrary or unreasonable. *United States v. Hughey*, 147 F.3d 423, 431 (5th Cir. 1998). Movant must show that the denial of the continuance resulted in prejudice that is "specific and compelling" or "serious." *Barnett*, 197 F.3d at 144. Also, since Harrison did not raise his additional objection below that denial of the continuance was error under *United States v. Booker*, 125 S.Ct. 738 (2005), because he should have been able to examine this potential sentencing issue, review of that issue is for plain error. To establish plain error, there must be clear or obvious error that affected Harrison's substantial rights. To determine whether the plain error affected Harrison's substantial rights, Harrison must demonstrate a probability sufficient to undermine confidence in the outcome. *United States v. Dominguez Benitez*, 124 S.Ct. 2333, 2340 (2004).

The district court's denial of Harrison's motion for continuance at the beginning of the sentencing hearing in order for him to obtain a psychiatric examination was not an abuse of discretion. Harrison has failed to show that the denial was arbitrary or unreasonable and that the denial of the continuance resulted in prejudice that is "specific and compelling" or

"serious." *Barnett*, 197 F.3d at 144; *United States v. Hughey*, 147
F.3d 423, 431 (5th Cir. 1998). As the district court expressly
noted in denying the continuance motion, it had observed Harrison
closely through two trials and a suppression hearing, heard him
testify (and questioned him at the suppression hearing) and
"never at any time have I gotten any indication that there are
any issues about his mental competency." No question of
Harrison's competency was ever raised in either of the two trials
or in any pretrial hearing. And, finally, he is not
unconditionally due a continuance for which he moved at so late a
date without any reasonable explanation for the last minute
nature of the motion.

Harrison also fails to establish plain error as to his
*Booker* claim because the PSR contained information on his
personal history, including information as to his mental and
emotional health; as stated above, the judge had ample
opportunity to observe him through trial; and his only argument
that the denial undermined confidence in the proceedings' outcome
is that he theoretically may have been able to make another
argument for the court to consider in its discretion in
determining his sentence.

**D. Sentence Reduction for Minor Participant**

Finally, we review for clear error the district court's
factual finding that the defendant is not a minor participant in

11

a crime for purposes of reviewing the denial of Harrison's motion for a downward departure based on U.S.S.G. § 3B1.2, which allows for a two-level reduction if a defendant is a "minor participant" in the offense for which he is being sentenced. *United States v. Garcia*, 242 F.3d 593, 598 (5th Cir. 2001). The determination of "minor participation" status is a "sophisticated factual determination" to be made by the sentencing judge. *Id*. at 597-98. Harrison indicates that he should have received the minor role reduction because (1) other courts have found the adjustment to be permissible when only one participant is charged in an indictment, as is his case, though others were involved and (2) his role was limited to transporting the marihuana. Harrison also points out that his compensation of $60,000 was minimal compared to the value of the illegal cargo he was transporting, which was worth $1.7 million in Chicago and Richmond, Illinois.

Harrison fails to establish clear error under this court's precedent. *See United States v. Pafahl*, 990 F.2d 1456, 1485 (5th Cir. 1993) (holding that a "'mule' or transporter of drugs may not be entitled to minor or minimal status"). U.S.S.G. § 3B1.2 indicates that it may be permissible to consider a mere drug transporter a minor participant but it is by no means an *automatic* or *mandatory* determination. Indeed, Harrison's role was essential for the drugs to get to Illinois from El Paso. *See United States v. Buenrostro,* 868 F.2d 135, 138 (5th Cir. 1989).

12

Harrison was not attributed for sentencing purposes with any amount of marihuana in excess of what he was knowingly transporting on this occasion.

## III. Conclusion

For the foregoing reasons, the defendant's conviction and sentence are

AFFIRMED.