IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 16, 2008

Charles R. Fulbruge III
Clerk

No. 07-41091
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

$34,000 CURRENCY, In United States Currency and/or Coin More or Less
with All Accumulated Interests Thereon

Defendant

ANTHONY BARNETT HARRIS

Claimant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:04-CV-716

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Claimant-Appellant Anthony Barnett Harris ("Harris"), acting pro se,[1]

appeals from the verdict in an in rem action brought by the United States

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

[1] Williams was represented by counsel at the trial level.

against $34,000 in U.S. currency seized from Harris. For the following reasons, we affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

On May 18, 2004, a Houston police officer, Frank Fulbright, was working surveillance around hotels and motels in Houston, looking for drug trafficking activity. Harris's rental car with Alabama plates, parked at one of the hotels, raised Fulbright's suspicions. Fulbright contacted the hotel and learned that an individual from Alabama named "Anthony Barnet [sic]" was registered there. Fulbright ran a computer check on the driver's license number given to the hotel and received a report under the name Anthony Barnett Harris listing a previous arrest for delivery of cocaine.

When Harris and another man, likely James Henry Williams ("Williams"), left the hotel in a jeep, Fulbright followed. The jeep's occupants began looking back, driving erratically, and in Fulbright's opinion, "trying to lose the tail." Fulbright returned to the hotel for further surveillance. Fulbright later observed the two men driving the rental car and apparently seeking to evade Fulbright by parking the car and "peeking around corners." Later that night, Harris and Williams left the motel and headed east on Interstate 10 toward Beaumont. Fulbright suspected that Harris and Williams were involved in drug trafficking activity because they acted suspiciously, drove a rental car with out-of-state plates, paid for the hotel room in cash, spent most of their time in the hotel room, and left the hotel a day early despite having paid for an additional night. Based on his suspicions, Fulbright contacted Beaumont Police Officer Jerry LaChance and told him he suspected Harris might be involved in narcotics trafficking.

LaChance and his partner Aaron Burleson spotted Harris's car on Interstate 10, followed it for several miles, and pulled Harris over for speeding and failure to maintain a single lane. Harris seemed very nervous, so Burleson

did a pat-down, which recovered nothing. LaChance ran a criminal history check and drivers license check in the police cruiser while Burleson questioned Harris and Williams. Burleson asked permission to search the car, and Harris denied permission. Subsequently, a police drug dog alerted to the trunk of the car. In a suitcase in the trunk, the officers found and seized $34,000 in U.S. currency in "a brick like bundle," wrapped in several shopping bags. Harris and Williams were not arrested, charged with any crime, or issued any citation.

Before trial in the government's seizure action, a magistrate judge considered Harris's motion to suppress the currency. Harris claimed that the currency was seized in violation of the Fourth Amendment and therefore could not be used in the forfeiture proceeding. See One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696 (1965); Wren v. Towe, 130 F.3d 1154, 1158 (5th Cir. 1997). Invoking Terry v. Ohio, 392 U.S. 1 (1968), Harris argued that (1) the initial stop was unsupported by reasonable suspicion of criminal activity, and therefore was not "justified at its inception," and (2) even if the stop was initially justified, its scope exceeded the original justification for the stop. The magistrate judge drafted a twenty-one page "Findings of Fact and Recommendation on Motion to Suppress," which recommended that the motion be denied. The district judge adopted those factual findings and recommendations in full. After a two-day trial, the jury concluded that the currency was "furnished, or intended to be furnished, by any person in exchange for a controlled substance." See 21 U.S.C. § 881(a)(6). The currency therefore was properly subject to forfeiture.

In this appeal, Harris argues (1) the district court erred in denying his motion to suppress evidence; (2) the jury verdict was not supported by sufficient evidence; and (3) the government's attorney made improper comments in closing arguments, undermining Harris's right to a fair trial.

## II. DISCUSSION

A.    Motion to suppress

In an appeal of a district court's ruling on a motion to suppress, we review questions of law de novo and factual findings for clear error.  United States v. Cano, 519 F.3d 512, 515 (5th Cir. 2008).

In ruling on Harris's motion to suppress, the district court first concluded that the Terry stop was initially justified.  The court found that the initial stop was based on the officers' objectively grounded and reasonable belief that traffic violations had occurred.  The district court credited the officers' statements that Harris was traveling 70 m.p.h. in a 65 m.p.h. zone and that the car bumped the shoulder stripe on three different occasions.  The only contrary evidence was Harris's testimony that he was not speeding or swerving out of his lane.  This is a simple factual finding that we cannot overturn absent clear error.  See United States v. Roberson, 6 F.3d 1088, 1092 (5th Cir. 1994) ("This polemic is oft-repeated daily in traffic courts across this country.  In each case the issue is one of credibility, and in each case its resolution is left to the factfinder.").

The fact that the stop was motivated in part by a suspicion of drug activity does not undermine the officers' legitimate justification based on a traffic violation.  Whren v. United States, 517 U.S. 806, 810 (1996) (noting that "a traffic-violation arrest . . . would not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search.'" (quoting United States v. Robinson, 414 U.S. 218, 221 n.1 (1973))); Goodwin v. Johnson, 132 F.3d 162, 173 (5th Cir. 1997) ("So long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment and comparable Texas law.").

The more complex question in this case is whether the officers permissibly prolonged the traffic stop:

> [A] Fourth Amendment violation occurs when the detention extends beyond the valid reason for the stop. Once a computer check is completed and the officer either issues a citation or determines that no citation should be issued, the detention should end and the driver should be free to leave. In order to continue a detention after such a point, the officer must have a reasonable suspicion supported by articulable facts that a crime has been or is being committed.

United States v. Santiago, 310 F.3d 336, 341-42 (5th Cir. 2002) (citations omitted). Although a canine search is not itself a "search" within the meaning of the Fourth Amendment, United States v. Place, 462 U.S. 696, 607 (1983), it is a Fourth Amendment violation if the canine search prolongs the stop after a computer check comes back clean and the officers lack other grounds for reasonable suspicion. See United States v. Dortch, 199 F.3d 193, 198-201 (5th Cir. 1999).

In this case, the district court found it unclear whether the dog alerted before or after the completion of the computer check. Nevertheless, the court concluded that the officers had reasonable suspicion of criminal activity beyond that supported by the traffic violations. The court cited Fulbright's report that the men were behaving suspiciously and that Harris had a prior drug conviction; Harris's nervousness during the traffic stop; Harris's and Williams's inconsistent answers to the officers' questions; and Williams's refusal to make eye contact with Burleson. The court concluded that this evidence was sufficient to support reasonable suspicion of criminal activity.

We look to the totality of the circumstances when determining whether an officer's suspicion is reasonable. United States v. Grant, 349 F.3d 192, 197 (5th Cir. 2003). This court has held that mere "uneasy feelings," inconsistent stories, and nervousness are insufficient—by themselves—to support reasonable suspicion. See Santiago, 310 F.3d at 338-39; Dortch, 199 F.3d at 200. Present in this case, however, was the additional factor of Fulbright's report that Harris and Williams had attempted to elude him in Houston, see Illinois v. Wardlow,

528 U.S. 119, 124 (2000) ("Nervous, evasive behavior is another pertinent factor in determining reasonable suspicion . . . ."), as well as the officers' knowledge of Harris's prior drug conviction. Therefore, we hold that the district court did not err in concluding that the sum of this evidence supported reasonable suspicion to detain Harris and Williams "for a[s] long as it took to diligently pursue a means of investigation that was likely to confirm or dispel their suspicion."

Harris argues that the dog's alert alone is insufficient to support forfeiture. See United States v. One Gates Learjet Serial No. 28004, 861 F.2d 868, 871 (5th Cir. 1998) (holding a dog's alert and trace amounts of cocaine found on a private jet insufficient to support forfeiture under 28 U.S.C. § 881(a)(4)). However, that argument goes to the legality of the forfeiture itself, not to the validity of the search following the dog's alert. It is well established that a drug dog's alert to the trunk of a car during an otherwise valid Terry stop supports at least reasonable suspicion for officers to search the trunk. See, e.g., United States v. Garcia-Garcia, 319 F.3d 726, 730 (5th Cir. 2003) ("Once the dog alerted, the agents had, at a minimum, sufficient reasonable suspicion to permit them to prolong the stop to explore further the potential source of the dog's alert."); United States v. Williams, 69 F.3d 27, 28 (5th Cir. 1995) ("The fact that the dog alerted provided probable cause to search [the trunk of a car]."). Because we conclude that the search was proper, we hold that the district court correctly denied Harris's motion to suppress.

B.    Record on appeal

Harris also argues that the jury verdict was not supported by the evidence and that the government's attorney mischaracterized and disparaged a defense witness during his closing statement. However, Harris failed to provide this court with a full copy of the district court's trial transcript. Under the Federal Rules of Appellate Procedure, an appellant who "intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the

evidence . . . must include in the record a transcript of all evidence relevant to that finding or conclusion." FED. R. APP. P. 10(b)(2). An appellant may file a partial transcript if the appellant also files a statement of the issues on appeal. FED. R. APP. P. 10(b)(3).

In this case, Harris filed a partial transcript that includes a 103-page excerpt of the original trial transcript. Key portions of the transcript were omitted, including Harris's own testimony, testimony of his business partner, Chantel Baker ("Baker"), and the final argument of Harris's trial counsel, Don D. Becker. On March 18, 2008, the Clerk of the Court notified Harris that the additional transcript would not be made part of the record unless Harris first obtained leave to supplement the record on appeal. Although Harris attempted to submit a full transcript, he did so without seeking or obtaining leave of this court. Harris claims that he submitted a statement of the issues under Rule 10(b)(3), but the docket reflects no such statement.

"'The failure of an appellant to provide a transcript is a proper ground for dismissal of the appeal.'" RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1289 (5th Cir. 1995) (quoting Richardson v. Henry, 902 F.2d 414, 416 (5th Cir. 1990) (dismissing appeal based on sufficiency of the evidence because appellant failed to include a transcript)). However, the decision to dismiss based on lack of a transcript is within our discretion. See Coats v. Pierre, 890 F.2d 728, 731 (5th Cir. 1989) (noting that the Court of Appeals has discretion in fashioning a response to the failure to include the transcript on appeal, and that dismissing the entire appeal is a drastic remedy to which we should rarely resort). Although Harris is acting pro se, we normally do not review any claims that challenge the sufficiency of the evidence at trial without viewing the complete transcript. See, e.g., Coats v. Penrod Drilling Corp., 5 F.3d 877, 890-91 (5th Cir. 1993) (declining to consider a sufficiency of the evidence challenge to a jury verdict when the appellant failed to provide the trial transcript). Regardless of

Harris's failure to provide the entire trial transcript, we can easily affirm the judgment below, in part because Harris failed to preserve the following objections at trial.

## C.    Sufficiency of the Evidence

Even without a full copy of the trial transcript, we decline to reverse the jury verdict because Harris failed to preserve this claim. Harris alleges that the government failed to produce evidence or testimony at his trial sufficient to support a conviction under 21 U.S.C. § 881. Harris notes his evidence that the currency derived from a legitimate business he runs with his partner, Baker. He also points out that after the stop and seizure, authorities did not investigate him for any drug-related offense, the officers did not test the currency or Harris's hands for drug residue, and they did not find any drugs or paraphernalia after searching the car.

Normally, our standard of review for a jury verdict is high: "We may overturn a jury verdict only if it is not supported by substantial evidence, meaning evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Snyder v. Trepagnier, 142 F.3d 791, 795 (5th Cir. 1998) (internal quotation marks omitted). In this case, however, Harris failed to preserve this issue on appeal by failing to move for judgment as a matter of law under FED. R. CIV. P. 50(a) at the close of the evidence and did not make a similar motion after the jury verdict. Navigant Consulting, Inc. v. Wilkinson, 508 F.3d 277, 288 (5th Cir. 2007) ("Generally, a party who fails to present a Rule 50(a) motion on an issue at the close of evidence waives . . . its right to challenge the sufficiency of the evidence on appeal."). Therefore, we will review only for plain error.[2]

---

[2] For the first time in his reply brief, Harris makes the unsupported assertion that he instructed his trial attorney to challenge the sufficiency of the evidence at the close of the trial, but that his attorney refused. Harris offers no basis for this court to excuse his failure to preserve this issue based on vague and unsupported allegations of ineffective assistance of

Proceeding under plain error review, Harris cannot succeed on the merits.[3] The incomplete record before us reflects that the jury heard substantial evidence to support probable cause that the seized cash was involved in drug transactions: a narcotics dog alerted to the money; the money was vacuum-wrapped and divided into $1,000-dollar increments with rubber bands (which two experienced police officers testified was standard practice for handling and transporting drug money); and Fulbright testified that he thought Harris's behavior in Houston suggested drug activity.[4] We cannot conclude that no reasonable jury would have found that this money was involved in drug transactions.

D.    Improper Argument

Harris also contends that the government's comments in its closing statement violated Harris's right to a fair trial. Specifically, Harris complains that the prosecutor spoke disparagingly about Baker's educational history and motive in running a cash-only business.[5] Again, however, Harris's counsel failed

---

counsel.

[3] We are also skeptical of whether Harris could succeed on this claim even if he had preserved this argument.

[4] Harris also argues that the jury's verdict rests on impermissible "drug courier profil[ing]." See United States v. Hanson, 801 F.2d 757, 762 (5th Cir. 1986). However, Hanson's holding applies only to whether certain characteristics of an individual may support reasonable suspicion under the Fourth Amendment, not the question of whether the government may confiscate currency under 18 U.S.C. § 881(a)(6). Id.

[5] The prosecutor's statement questioned why Baker, as an accountant, would run an all-cash business:

> THIS MS. BAKER WOMAN, WHO IS SUPPOSEDLY AN ACCOUNTANT, OR GOT A WHAT, AN ONLINE DEGREE FROM PHOENIX SCHOOL OF SOMETHING OR ANOTHER, HER TESTIMONY IS SUPPOSED TO BE SO CREDIBLE. DO YOU REALLY BUY THE FACT THAT SHE, THIS WOMAN WITH ALL OF THIS TRAINING, IS SCARED OF BANKS? HAS SHE NOT EVER HEARD OF THE FDIC AND FEDERALLY INSURED ACCOUNTS? WHAT'S SHE GOT TO BE SCARED OF?
> YOU KNOW THE TRUTH OF THE MATTER IS WHAT SHE HAS GOT OVER THERE IS THE SAME THING THAT A LOT OF DRUG DEALERS HAVE. SHE HAS GOT A LITTLE FRONT BUSINESS IN THERE

to make an objection at trial. "Although we may review such challenges even where no contemporaneous objection was made, we are, of course, extremely reluctant to address for the first time on review errors which the trial court was not given the opportunity to consider and correct." Whitehead v. Food Max of Miss., Inc., 163 F.3d 265, 276 (5th Cir. 1998) (citations and internal quotation marks omitted). Therefore, we review for plain error.

Harris presumably presented Baker's testimony in attempt to argue that the seized currency was for use in a legitimate business; thus, the legitimacy of that business was a pertinent concern to the jury. The prosecutor's statement merely observed that it was suspicious that a trained accountant would run an all-cash business. Courts permit "reasonable latitude" in counsel's closing arguments. Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 283 (5th Cir. 1975). The comments in question did not place before the jury facts not in evidence, see id., but merely proffered a possible conclusion based on the trial evidence. Therefore, we find no error.

Accordingly, we AFFIRM with respect to the district court's evidentiary ruling and AFFIRM the final judgment of the district court.

---

LAUNDERING MONEY.