**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 01-40467
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMES PATRICK KELLY,

Defendant - Appellant.

Appeal from the United States District Court
For the Southern District of Texas

August 9, 2002

Before WIENER, EMILIO M. GARZA, and PARKER, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant-Appellant James Patrick Kelly appeals his conviction for drug possession in violation of 21 U.S.C. § 844(a), and knowingly making a false statement to a United States Customs Agent in violation of 18 U.S.C. § 1001. The sole issue on appeal is whether Kelly's Fourth Amendment rights were violated when he was subjected to a canine sniff of his person, including a brief touching of his groin area, on the pedestrian walkway of the bridge connecting Laredo, Texas to Nuevo Laredo, Mexico.

Kelly walked from Mexico to the United States via International Bridge Number 1 in Laredo, Texas. Lexi, a trained narcotics canine, was present on the walkway with her trainer, United States Customs Agent Juan De Dios Aguero, when Kelly crossed the bridge. Lexi showed interest in Kelly and began walking alongside him. Lexi then touched her snout to Kelly's groin area and alerted. Lexi is a "passive alert" dog, who sits down or exhibits a change in behavior when alerting rather than scratching or biting at the area of the contraband. After Lexi alerted, Kelly was asked if he had any medications or contraband to declare. After he answered in the negative, he was escorted into a search room. While in the search room, Lexi alerted once again after sniffing Kelly. Another agent then conducted a pat-down of Kelly's body. When the agent felt a small horizontal bundle in Kelly's groin area, Kelly was ordered to drop his pants for a strip search. The search uncovered Rohypnol and Valium pills hidden in Kelly's groin area.

Kelly was subsequently indicted for possession of flunitrazepam (Rohypnol) and Valium, and with knowingly making a false statement to a Customs Agent. Before trial, Kelly moved to suppress all evidence, including statements, that resulted from the canine sniff, alleging that it was an unreasonable search in violation of the Fourth Amendment. The district court, after conducting a hearing on the motion, concluded that the up-close canine sniff was a Fourth Amendment search, but held that it nonetheless was reasonable because it was a "routine border search," requiring no individualized suspicion. *United States v. Kelly*, 128 F. Supp. 2d 1021 (S.D. Tex. 2001). Kelly was found guilty after a bench trial and sentenced to a ten-month term of imprisonment, a one-year term of supervised release, and a $225 special assessment.

Kelly now argues that the district court erred when it denied his motion to suppress. When reviewing a district court's ruling on a motion to suppress, we review questions of law de novo and

accept the factual findings of the trial court unless they are clearly erroneous. *United States v. Rivas*, 157 F.3d 364, 367 (5th Cir. 1998). We view the evidence in the light most favorable to the party who prevailed in the district court. *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons. . . and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. Warrantless searches and seizures are "per se unreasonable unless they fall within a few narrowly defined exceptions."[1] *United States v. Roberts*, 274 F.3d 1007, 1011 (5th Cir. 2001). Border searches constitute one of the exceptions to the probable cause and warrant requirements of the Fourth Amendment.[2] The border-search exception permits a government officer at an international border to conduct a routine search and seizure, "without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country." *United States v. Montoya de Hernandez,* 473 U.S. 531, 537 (1985); *Rivas*, 157 F.3d at 367 ( "Under the border-search doctrine,

---

[1]The district court, in its opinion, first concluded that the canine sniff at issue was a Fourth Amendment search. *Kelly*, 128 F. Supp. 2d at 1025. We agree with the district court's conclusion. Although a canine sniff of an object, as opposed to a person, is normally not a search*,* this circuit has previously held that an up-close canine sniff involving contact with a person's body is a search as defined in the Fourth Amendment. *Compare United States v. Hernandez,* 976 F.2d 929, 930 (5th Cir. 1992) (holding canine sniff of car's exterior is not a Fourth Amendment search), *and United States v. Goldstein*, 635 F.2d 356, 361 (5th Cir. Unit B Jan. 1981) (holding canine sniff of checked luggage at an airport is not a search), *with Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 477, 479 (5th Cir. 1982) (per curiam) (holding that up-close canine sniff of students at school is a search because the Fourth Amendment "protects people, not places").

[2]Alternatively stated, searches at the border "are deemed reasonable simply by virtue of the fact that they occur at the border." *United States v. Sandler*, 644 F.2d 1163, 1165 (5th Cir. 1981) (en banc). Reasonableness, in the context of the Fourth Amendment, "depends upon a balance which must be struck between, on the one hand, the level of official intrusion into individual privacy and, on the other hand, the public interest to be served by such an intrusion." *Id*. at 1166 (citing *United States v. Himmelwright*, 551 F.2d 991, 994 (5th Cir. 1977)).

government agents may conduct a 'routine search' at the international border or its functional equivalent without probable cause, a warrant, or any suspicion to justify the search."). A "routine" search is one that does not "seriously invade a traveler's privacy." *Cardenas,* 9 F.3d at 1148 n.3. In evaluating whether a search is "routine," "the key variable is the invasion of the privacy and dignity of the individual." *Sandler*, 644 F.2d at 1167. We have previously determined that ordinary pat-downs or frisks, removal of outer garments or shoes, and emptying of pockets, wallets, or purses are all routine searches, and "require no justification other than the person's decision to cross our national boundary." *Sandler*, 644 F.2d at 1169; *see also United States v. Vega-Barvo*, 729 F.2d 1341, 1345 (11th Cir. 1984) (noting that a luggage search, a pat-down, and a frisk are routine searches because they "intrude only slightly on a person's privacy").

"Non-routine" border searches, on the other hand, are more intrusive and require a particularized reasonable suspicion before a search can be conducted. *Rivas*, 157 F.3d at 367 ("A stop and search that is not routine requires a reasonable suspicion of wrongdoing to pass constitutional muster." (internal citations omitted)). Non-routine searches include body cavity searches, strip searches, and x-rays. *Sandler,* 644 F.2d at 1166 (describing reasonable suspicion requirement for strip searches); *United States v. Mejia*, 720 F.2d 1378, 1381-82 (5th Cir. 1983) (holding that reasonable suspicion justified abdominal x-ray of suspected drug courier); *see also Montoya de Hernandez,* 473 U.S. at 541 (holding that suspect can be detained at border for sixteen hours with reasonable suspicion that she is smuggling contraband); *Rivas*, 157 F.3d at 367 (holding that drilling into metal frame of trailer when traveler was stopped at a checkpoint was a non-routine search). These types of objectively intrusive searches would likely cause any person significant embarrassment, and invade "the privacy and dignity of the individual." *Sandler*, 644 F.2d at 1167.

Here, Kelly argues that the canine sniff of his person was a non-routine border search because the sniff, including brief contact with his groin area, was exceptionally intrusive. We disagree. Persons approaching an international border and checkpoint can reasonably expect to be stopped, questioned, and possibly searched. *See Montoya de Hernandez*, 473 U.S. at 539 (discussing diminished expectation of privacy at the border). As a result, we believe the risk of embarrassment or indignity to a traveler entering the United States at a border crossing resulting from a canine sniff is slight at best. *See Sandler*, 644 F.2d at 1167; *Mejia,* 720 F.2d at 1382 (defining intrusion, for purposes of a search, not as physical invasion, but rather as the risk of embarrassment, indignity, and invasion of privacy); *see also Vega-Barvo*, 729 F.2d at 1346 (describing "indignity analysis" in relation to border searches). Certainly, a canine sniff, even one involving some bodily contact, is no more intrusive than a frisk or a pat-down, both of which clearly qualify as routine border searches.[3]

Finally, we find Kelly's attempt to rely on *Horton v. Goose Creek Independent School District* to support his contention that a canine sniff is a non-routine search unpersuasive. In *Horton*, this court held that an up-close canine sniff of students while in school without reasonable suspicion was unreasonable. 690 F.2d at 481-82 ("The intrusion on the dignity and personal security that goes with the type of canine inspection of the student's person involved in this case cannot be justified by the

---

[3]We note that the First and Eleventh Circuits have identified several factors that may be used to evaluate whether a border search is routine. *See Vega-Barvo*, 729 F.2d at 1346 (identifying three factors, including: (1) "physical contact between the searcher and the person searched"; (2) "exposure of intimate body parts"; and (3) "use of force."); *United States v. Braks*, 842 F.2d 509, 512 (1st Cir. 1988) (describing six factors including: (1) whether the search requires exposure of intimate body parts or removal of clothing; (2) physical contact between the searcher and the suspect; (3) use of force; (4) whether the suspect is subjected to pain or danger; (5) the overall manner in which the search is conducted; and (6) whether reasonable expectations of privacy are abrogated by the search). We need not discuss these factors in detail here because it is clear that under either test a canine sniff during a border entry is "routine."

need to prevent abuse of drugs and alcohol when there is no individualized suspicion."). *Horton*, however, can be easily distinguished from the facts of this case because *Horton* is not a border case but rather analyzed canine sniffs in the context of a school environment. The Government's power to conduct searches for contraband in order to secure its international borders is significant. The balance between the government's intrusion on the individual's Fourth Amendment interests and the promotion of legitimate government interests is "struck much more favorably to the Government at the border." *Montoya de Hernandez*, 473 U.S. at 540. In addition, searches conducted at an international border are less likely to cause embarrassment or loss of dignity to the subject. In *Horton*, the court was particularly concerned about the impact of the public, in-class searches on young adolescents, and emphasized the obvious "embarrassment which a young adolescent, already self-conscious about his or her body, might experience when a dog. . .enters the classroom specifically for the purpose of sniffing the air around his or her person." *Horton*, 690 F.2d at 479. In contrast, travelers approaching an international border should be aware of, and prepared for, the possibility of a search of their luggage and their person. *Montoya de Heranandez*, 473 U.S. at 539. Thus, *Horton* is inapposite, and we conclude that the canine sniff at issue was a routine border search.

In sum, we hold that the canine sniff in this case was a routine border search, and did not require any finding of reasonable suspicion. Thus, the district court properly denied Kelly's motion to suppress and his conviction is AFFIRMED.