# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 2, 2020

Lyle W. Cayce
Clerk

No. 19-40554

United States of America,

*Plaintiff—Appellee*,

*versus*

Alfredo Aguilar, Jr.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:18-CR-401-1

Before Jolly, Jones, and Willett, *Circuit Judges*.

E. Grady Jolly, *Circuit Judge*:

Alfredo Aguilar, Jr. attempted to cross into the United States from Mexico with two female associates both of whom carried large cans filled with methamphetamine. After detaining Aguilar, United States Customs and Border Protection (CBP) agents forensically searched his cell phone without a warrant. Soon after, Aguilar was charged with multiple counts of narcotics conspiracy, possession, and importation. The district court denied Aguilar's motion to suppress the evidence found during the forensic search of his cell phone, and following a stipulated bench trial, found Aguilar guilty on all counts in the indictment. Aguilar appeals only the denial of the motion to

suppress.   Because the CBP agents acted in good faith when searching Aguilar's phone, we affirm.

## I.

The Gateway to the Americas International Bridge connects Nuevo Laredo, Mexico with Laredo, Texas.  Because the bridge is a port of entry to the United States, any person crossing the bridge from Mexico to the United States must pass CBP primary inspection and, if the reviewing CBP officer thinks necessary, secondary inspection.

At 11:00 p.m. on May 15, 2018, Aguilar, accompanied by Cristin Cano and Cristal Hernandez, attempted to enter the United States on foot by crossing the Gateway to the Americas International Bridge.  Cano was carrying two plastic-wrapped one-gallon cans that were labeled as containing hominy beans.  Hernandez carried similar cans that were labeled as containing jalapeños. CBP Officer Saucedo was the primary inspection agent who interviewed Cano and Hernandez.  Saucedo was suspicious of the heft and sound of the cans, so he referred the women to the secondary inspection area.   The secondary inspection agent, CBP Officer Trevino, first interviewed Cano alone and then Hernandez and Cano together.  Trevino was suspicious about the cans' contents because most cans of jalapeños contain vinegar, but when he shook these cans, it sounded like there was no liquid inside the cans.  Trevino's suspicion was further heightened because the women said that the cans contained ingredients for the Mexican soup menudo when he had never known anyone to include jalapeños in menudo. Trevino thus decided to have a K9 unit inspect the cans.

Meanwhile, Aguilar was being screened by CBP Officer Serna at the primary inspection point.  When Serna ran Aguilar's Texas driver's license through a customary database search, he received an alert that Aguilar previously had been arrested for smuggling two undocumented aliens into

the United States.  Serna then asked Aguilar if he was traveling with anyone else, and Aguilar indicated that he was traveling with the two women who had been inspected by Saucedo.  Serna then sent Aguilar to the secondary inspection area.  During the secondary inspection, Aguilar told CBP agents that he and the two women had gone to Mexico to buy ingredients for menudo and that he had been the one to pay for the groceries.

When the K9 unit arrived, there was a K9 alert on the cans carried by Cano and Hernandez.  And an x-ray of the cans revealed anomalies. Following the x-ray, the CBP contacted Homeland Security Investigations Special Agent Salinas to continue the investigation.  When Salinas arrived, he interviewed Cano and Hernandez, but Aguilar declined to provide a statement.  The next afternoon, Salinas took custody of Aguilar's phone. Nine days later, another agent forensically examined the phone's SIM card without a warrant.  The forensic data search of Aguilar's cell phone showed that he had recently placed six outgoing calls to phone numbers in Mexico.

Eventually, the law enforcement investigation revealed that the cans carried by Cano and Hernandez contained 10.7 kilograms of methamphetamine.  Because of his connection to Cano and Hernandez, Aguilar was charged with conspiring to import more than 50 grams of methamphetamine into the United States and with importing more than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1)(H), 963.  He also was charged with conspiring to possess more than 50 grams of methamphetamine with the intent to distribute and with possessing more than 50 grams of methamphetamine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846. Following his indictment, Aguilar moved to suppress the evidence obtained from the forensic examination of his cell phone.  The district court held an evidentiary hearing and denied Aguilar's motion, reasoning "that the agents acted reasonably . . . pursuant to a good-faith belief that they could search

[the] phone and its contents." Soon thereafter, Aguilar agreed to a stipulated bench trial, and the district court found Aguilar guilty on all counts. Notably, none of the evidence recovered from the forensic search of Aguilar's phone was included in the facts stipulated to at the bench trial. Aguilar appeals the denial of the motion to suppress.

## II.

## A.

As an initial matter, we address whether, because of mootness, we lack jurisdiction to consider the district court's denial of Aguilar's motion to suppress. At the stipulated bench trial, the district court found Aguilar guilty, beyond a reasonable doubt, of each count in the indictment without considering the import of the six phone calls made to Mexico. Because the district court found Aguilar guilty without considering the evidence that he sought to suppress, it appears, at first blush, that any challenge to the district court's denial of Aguilar's motion to suppress would be moot. Indeed, we have raised similar mootness concerns in the past. *See United States v. Garcia-Ruiz*, 546 F.3d 716, 718–19 (5th Cir. 2008). Here, Aguilar explained to the district court that he had agreed to the stipulated bench trial with the understanding that he had preserved the suppression issue for appeal. *See Garcia-Ruiz*, 546 F.3d at 719 (citing *United States v. Mendoza*, 491 F.2d 534 (5th Cir. 1974), which permitted appeal on the merits of a suppression motion from a trial on stipulated facts because defendants "sought to expressly reserve their right to appeal from the order denying the motion to suppress"). Stated differently, Aguilar's agreement to the stipulated facts was subject to the correctness of the district court's ruling on the motion to suppress. Further, towards the end of the stipulated bench trial, the district court assured Aguilar that he was "going to be able to appeal . . . to another Court to see if there were any mistakes that were made, as far as the

suppressing the evidence." Based on these statements, we are convinced that Aguilar reserved the right to appeal the district court's denial of his motion to suppress. Consequently, we are satisfied that we have jurisdiction to consider the merits of this appeal.

B.

Having determined that the district court's denial of Aguilar's motion to suppress is properly before us, we turn to the merits of the motion to suppress ruling. "When reviewing a denial of a motion to suppress evidence, we review factual findings for clear error and the ultimate constitutionality of law enforcement action *de novo*." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). Because the government prevailed below, we view the evidence in the light most favorable to it. *See id.*

Aguilar argues that the Supreme Court's decision in *Riley v. California*, 573 U.S. 373, 393–97 (2014), which recognized a heightened privacy interest in smart phones, bars warrantless forensic searches of cell phones at the border. The district court did not reach this issue, but instead, held that regardless of whether there was a Fourth Amendment violation, the evidence obtained from Aguilar's cellphone should not be suppressed because the agents who conducted the forensic search acted in good faith.

Starting with the basics, the Fourth Amendment prohibits unreasonable searches and seizures. *See* U.S. CONST. amend. IV. When government officials conduct a search in violation of the Fourth Amendment, prosecutors are barred from introducing evidence obtained in the unlawful search at trial. *See United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir. 2019). But, as the district court noted, there is the good faith exception to the exclusionary rule. Under this exception, "evidence is not to be suppressed . . . where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are

authorized." *United States v. Ramirez-Lujan*, 976 F.2d 930, 932 (5th Cir. 1992) (internal quotations and citation omitted). This exception thus applies when government officials "acted reasonably in light of the law existing at the time of the search." *United States v. Molina-Isidoro*, 884 F.3d 287, 290 (5th Cir. 2018). Accordingly, to determine whether the district court properly applied the good faith exception to deny Aguilar's motion to suppress, we ask: What was the law at the time of the search, and secondly, was CBP's forensic search of Aguilar's cell phone objectively reasonable in the light of the then-existing law?

Although the Fourth Amendment applies at the border, its protections are severely diminished. *See id.* at 290–91. At the border, "[t]he government's interest is at its 'zenith' because of its need to prevent the entry of contraband . . . and an individual's privacy expectations are lessened by the tradition of inspection procedures at the border." *Id.* at 291 (citations omitted). Accordingly, the border-search exception allows officers to conduct "routine inspections and searches of individuals or conveyances seeking to cross [United States] borders" without any particularized suspicion of wrongdoing. *United States v. Ramsey*, 431 U.S. 606, 619 (1977) (internal quotations and citation omitted). Individualized suspicion may, however, be required if a border search is "highly intrusive" or impinges on "dignity and privacy interests." *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004).

Neither this court nor the Supreme Court has announced whether forensic digital border searches require individualized suspicion. But, at the time of the search of Aguilar's phone, the Ninth Circuit, the Fourth Circuit, and a Maryland district court had concluded that forensic digital border searches require reasonable suspicion. *See United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc); *United States v. Kolsuz*, 890 F.3d 133, 144–46 (4th Cir. 2018), *as amended* (May 18, 2018); *United States v.*

*Saboonchi*, 48 F. Supp. 3d 815, 819 (D. Md. 2014). It appears to us, however, that no court had required a warrant to conduct a forensic search of a cellphone at the border.

Given the state of the law at the time Aguilar's phone was forensically searched, we conclude that the border agents had a good faith, reasonable belief that they could search Aguilar's phone without obtaining a warrant. At the time of the search, CBP knew Aguilar had attempted to cross the border with Cano and Hernandez who were carrying four cans that physical inspection and x-rays revealed to be suspicious. Further, a K-9 unit had alerted the agents to the presence of narcotics in the cans, and Aguilar had implicated himself as the purchaser of the cans' contents. Thus, there was clearly "a particularized and objective basis for suspecting [Aguilar] of criminal activity," which is all that is required to establish reasonable suspicion, the highest level of suspicion that had been required at the border at the time of the search.[1] *See Ornelas v. United States*, 517 U.S. 690, 696 (1996) (internal quotations and citations omitted). And, although *Riley* made clear that individuals have a heightened privacy interest in smart phones, this court has held post-*Riley* that border agents acted reasonably when they

---

[1] As discussed at oral argument, subsequent to the search of Aguilar's phone, the Ninth Circuit has held that "border officials may conduct a forensic cell phone search only when they reasonably suspect that the cell phone contains contraband." *United States v. Cano*, 934 F.3d 1002, 1020 (9th Cir. 2019). Thus, according to the Ninth Circuit, warrantless forensic searches of cell phones are impermissible when the agents merely suspect that the phone will contain evidence "of past or future border-related crimes." *See id.* Because *Cano* was decided after the search of Aguilar's phone, we do not consider its holding in assessing whether the agents acted in good faith. *See Molina-Isidoro*, 884 F.3d at 290. And, although Judge Costa's concurrence in *Molina-Isidoro* expressed similar concerns about allowing border cell phone searches for items other than contraband, *see id.* at 295–97, *Cano* is the only case that we have found that requires a warrant to conduct a forensic data search at the border. We therefore think that, at the time of the forensic search, it was objectively reasonable for the CBP agents to conclude that reasonable suspicion was all they needed to conduct a forensic search of Aguilar's phone.

"continue[d] to rely on the robust body of pre-*Riley* caselaw that allowed warrantless border searches of computers and cell phones." *Molina-Isidoro*, 884 F.3d at 292. We therefore agree with the district court that the good faith exception to the exclusionary rule applies to the forensic search of Aguilar's phone, and we affirm the district court's denial of Aguilar's motion to suppress.

## III.

To sum up: the only issue presented in this appeal is whether the district court erred in denying Aguilar's motion to suppress the information obtained from the forensic border search of his cell phone. We have jurisdiction to consider this issue because, although he agreed to a stipulated bench trial, Aguilar expressly reserved the right to appeal the district court's denial of the motion to suppress. And because the good faith exception to the exclusionary rule applies to the forensic search of Aguilar's phone, the district court did not err in denying Aguilar's motion to suppress.

Accordingly, the judgment of the district court is, in all respects,

AFFIRMED.