# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 9, 2022

Lyle W. Cayce
Clerk

No. 21-50989

United States of America,

*Plaintiff—Appellee*,

*versus*

Julio Cesar Tenorio,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:19-CR-1512-1

Before Wiener, Higginson, and Wilson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Following a bench trial, appellant Julio Cesar Tenorio was convicted of smuggling bulk cash in violation of 31 U.S.C. § 5332. He was sentenced to sixteen months of imprisonment and three years of supervised release. Tenorio appeals his conviction and sentence, arguing that the district court erred in denying his motion to suppress evidence obtained from a stop and search at the border as he was leaving the United States and attempting to enter Mexico. We AFFIRM.

No. 21-50989

On June 13, 2019, Tenorio drove a Chevrolet Tahoe to the port of entry in Del Rio, Texas, on the U.S.-Mexico border. Customs and Border Protection ("CBP") officers stopped Tenorio's vehicle in the outbound lane, and Tenorio told the officers that he was leaving the country and traveling to Mexico. Tenorio declared that he did not have any weapons or ammunition and that he had $3,200 in U.S. currency. CBP officer Eric Medina testified that Tenorio "appeared nervous" during the encounter and "began to have a facial twitch" "as soon as [they] started talking about the currency." He further testified that when another officer began a spot check of the vehicle with a canine, Tenorio "kept looking back towards the canine to see what the canine was doing."

According to Medina, because of Tenorio's nervous demeanor, his indication that he was traveling from the United States to Mexico, and the fact that the canine "showed some interest" in the vehicle, officers asked him to pull his vehicle over. Tenorio pulled over to a spot approximately 20 to 25 yards from where the initial stop occurred. Medina testified that this initial encounter lasted less than five minutes.

Once pulled over for the secondary search, Tenorio was given an opportunity to amend his declaration. He again declared no weapons, no ammunition, and $3,200 in cash. The officers then asked Tenorio to step out of his vehicle. In the meantime, a canine alerted to the back of Tenorio's vehicle. After sniffing the vehicle, the canine came over to Tenorio and alerted to his boot. Also during the secondary inspection, an officer discovered a GPS tracker beneath the steering wheel of Tenorio's vehicle. Medina testified that during this period, Tenorio "avoid[ed] all eye contact" and that his hands were "visibly trembling."

Medina frisked Tenorio for weapons, during which officers noticed that Tenorio kept staring down at his boots. An officer asked Tenorio to lift

his leg and looked down to see black trash bags inside his boots.  Inside the bags was U.S. currency totaling $18,900, which, combined with an additional $3,404 cash in Tenorio's wallet, amounted to $22,304.

Officers called Homeland Security Investigations ("HSI") Agent Allen Conner to the port of entry, where Conner met with Tenorio and read him his *Miranda* rights.  Tenorio waived those rights and told Conner that the cash was from alien-smuggling activities.  After his interview with Tenorio, Conner searched two cell phones that Tenorio had on him but found nothing of interest.  Conner never questioned Tenorio about the contents of the phones and later turned the phones over to Tenorio's mother.

On July 10, 2019, Tenorio was charged in a one-count indictment with bulk cash smuggling in violation of 31 U.S.C. § 5332.  Tenorio moved to suppress evidence obtained from the searches at the border and the search of his cell phones, as well as his post-arrest statements to Agent Conner.  The district court held an evidentiary hearing and denied the motion.  Tenorio was convicted following a bench trial and now appeals, arguing that the court erred in denying his suppression motion.

On appeal, Tenorio contends that (1) the dog sniff of his person was unlawful because the officers lacked reasonable suspicion, (2) his detention and referral to a secondary inspection constituted a nonroutine border search, which required reasonable suspicion, and (3) the search of his cell phones at the border was unlawful because the officers lacked a search warrant and, in the alternative, lacked reasonable suspicion to conduct the search.

On appeal from a district court's ruling on a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*, viewing the evidence in the light most favorable to the prevailing party. *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002).

Tenorio's first two arguments are resolved under the border-search exception to the Fourth Amendment warrant requirement. Although the Fourth Amendment's prohibition on unreasonable searches applies at the international border, its protections there are "severely diminished." *United States v. Aguilar*, 973 F.3d 445, 449 (5th Cir. 2020). Because "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border," searches made at the border "are reasonable simply by virtue of the fact that they occur at the border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004) (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)). Accordingly, "[r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985). This court has held that the border-search exception applies not only to entrants into the country but also to those departing. *United States v. Odutayo*, 406 F.3d 386, 392 (5th Cir. 2005).

The border-search exception allows "routine" searches and seizures without individualized suspicion or probable cause. *Montoya de Hernandez*, 473 U.S. at 538. This court explained the meaning of "routine" in *United States v. Kelly*, writing that

> [a] "routine" search is one that does not seriously invade a traveler's privacy. In evaluating whether a search is routine, the key variable is the invasion of the privacy and dignity of the individual. We have previously determined that ordinary pat-downs or frisks, removal of outer garments or shoes, and emptying of pockets, wallets, or purses are all routine searches, and require no justification other than the person's decision to cross our national boundary.

No. 21-50989

> "Non-routine" border searches, on the other hand, are more intrusive and require a particularized reasonable suspicion before a search can be conducted. Non-routine searches include body cavity searches, strip searches, and x-rays. These types of objectively intrusive searches would likely cause any person significant embarrassment, and invade the privacy and dignity of the individual.

302 F.3d at 294 (internal quotations and citations omitted).

Here, Tenorio first argues that the canine sniff of his person required reasonable suspicion. It did not. The record indicates that the dog sniffed around Tenorio's vehicle and person and gave a positive alert to Tenorio's boot. As the court in *Kelly* explained, "a canine sniff, even one involving some bodily contact, is no more intrusive than a frisk or a pat-down, both of which clearly qualify as routine border searches." *Id.* at 295; *see also id.* at 294–95 (holding that a canine sniff of the defendant, including contact with his groin area, was a routine border search). The canine sniff here was a routine border search and therefore did not require individualized suspicion.[1] *Montoya de Hernandez*, 473 U.S. at 538. Tenorio's first argument lacks merit.

Tenorio's second argument fails for similar reasons. He contends that his detention was unconstitutionally prolonged and amounted to a nonroutine border search, requiring reasonable suspicion. But the length and circumstances of Tenorio's detention were consistent with a routine border search. The secondary search lasted approximately ten minutes and

---

[1] Tenorio dedicates his arguments on this first issue to the proposition that dog sniffs are unreliable. He contends that "[t]he canine sniff of Tenorio's person . . . failed to provide a clear and reliable detection of undeclared currency given the fallibility of currency dog sniffs." This argument appears to go to whether the CBP officers had reasonable suspicion of Tenorio's wrongdoing. But we need not reach this issue because, as discussed, no such suspicion was required for this routine dog sniff.

consisted of questioning by CBP agents, a search of Tenorio's vehicle, a canine sniff of his vehicle and person, a weapons frisk, and an eventual request that Tenorio lift his leg. These ordinary investigative measures are, individually and collectively, a far cry from "cavity searches, strip searches, . . . x-rays" and other "objectively intrusive searches" that "invade the 'privacy and dignity of the individual.'" *Kelly*, 302 F.3d at 294 (citations omitted); *see also Flores-Montano*, 541 U.S. at 151, 154–56 & n.3 (holding that the disassembly of a vehicle's fuel tank, resulting in a detention of approximately an hour, was a routine border search not requiring reasonable suspicion); *United States v. Berisha*, 925 F.2d 791, 793–94 (5th Cir. 1991) (holding that defendant's initial detention and subsequent referral to a secondary inspection by CBP officers at an airport was a routine search and thus did not require reasonable suspicion). Tenorio's detention did not exceed the bounds of routine border searches and therefore did not require reasonable suspicion.[2]

Finally, we do not address the constitutionality of the search of Tenorio's cell phones. The district court made a finding, which Tenorio does not dispute on appeal, that Agent Conner did not use any information from the phone search before or during his interview with Tenorio. And the parties' stipulation of facts for Tenorio's trial includes no evidence from the cell-phone search. Accordingly, there is no evidence to be suppressed. *See United States v. Lewis*, 621 F.2d 1382, 1389 (5th Cir. 1980).

The district court did not err in denying Tenorio's suppression motion. Tenorio's conviction and sentence are AFFIRMED.

---

[2] Again, we need not address Tenorio's arguments that the officers did not have reasonable suspicion to conduct the secondary inspection, as no such suspicion was necessary.